1
2
3
4
5
6
     IN THE UNITED STATES DISTRICT COURT
7
    FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
      SAN FRANCISCO DIVISION
9
United States of America,     NO. CR 08-00938 JW

10
    Plaintiff,    **ORDER DENYING MOTION FOR**
          **JUDGMENT OF ACQUITTAL;**
11
  v.        **GRANTING MOTION FOR NEW TRIAL**
12
Jamie Harmon,
13
    Defendant.
          /
14
      **I. INTRODUCTION**

15
   On December 31, 2008, an Indictment was filed against Christian Pantages ("Pantages") and

16
Jamie Harmon ("Defendant"). (hereafter, "Indictment," Docket Item No. 1.) Pantages was indicted

17
for: (1) one count of Conspiracy to Buy Stolen Goods Constituting an Interstate Shipment, in

18
violation of 18 U.S.C. § 371; and (2) one count of Conspiracy to Launder Monetary Instruments, in

19
violation of 18 U.S.C. § 1956(h). Defendant was indicted for: (1) one count of Conspiracy to

20
Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h); and (2) five counts of

21
Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). (Id.) The

22
Indictment alleges that Defendant, Pantages' attorney, deposited funds belonging to Pantages that

23
Defendant knew had been derived from unlawful activity into her attorney-client trust account, and

24
then illegally issued a series of checks to Pantages and Pantages' wife in various increments. (Id.)

25
   Presently before the Court is Defendant's Motion for Judgment of Acquittal or, in the

26
Alternative, for a New Trial. (hereafter, "Motion," Docket Item No. 175.) The government has filed

27
28

**United States District Court**
For the Northern District of California

an Opposition to the Motion.[1]  The Court conducted hearings on February 4, 2011 and on April 1, 2011.  Based on the papers submitted to date and oral argument, the Court DENIES Defendant's Motion for Judgment of Acquittal and GRANTS Defendant's Motion for New Trial.

## II.  BACKGROUND

The Court reviews the procedural history relevant to the present Motion.

On August 31, 2009, the Court denied Defendant's Motion to Dismiss Indictment for pre-indictment delay, on the ground that Defendant failed to prove "actual non-speculative prejudice," and for prosecutorial failure to disclose a witness' plea agreement to the Grand Jury in regards to the witness' motive, on the ground that the prosecutor was not obligated to disclose exculpatory evidence to a grand jury.  (See Docket Item No. 42.)  On March 8, 2010, Pantages pleaded guilty as to all counts against him pursuant to a plea agreement.  (See Docket Item No. 81.)  On July 1, 2010, the Court denied Defendant's Motion to Dismiss Indictment for prosecutorial misconduct, finding that the government had not violated the Jencks Act or Brady v. Maryland by failing to disclose evidence.  (See Docket Item No. 110.)  On July 7, 2010, a jury trial commenced as to the charges against Defendant.  (See Docket Item No. 125.)  On July 20, 2010, the jury hung as to Count Two Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h)–but rendered a unanimous verdict finding Defendant guilty of Counts Three through Seven for Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  (See Docket Item No. 149.)

Presently before the Court is Defendant's Motion for Judgment of Acquittal or, in the alternative, for a New Trial.

## III.  STANDARDS

Federal Rule of Criminal Procedure 29(c) permits a court to "set aside the verdict and enter an acquittal" if the jury has returned a guilty verdict or "[i]f the jury has failed to return a verdict.  In ruling on a Rule 29 motion, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements

---

[1]  (Government's Opposition to Defendant's Post-Trial Motion for Judgment of Acquittal or New Trial, hereafter, "Opp'n," Docket Item No. 183.)

United States District Court
For the Northern District of California

of the crime beyond a reasonable doubt." <u>United States v. Alarcon-Simi</u>, 300 F.3d 1172, 1176 (9th Cir. 2002) (internal quotation marks omitted).  The court "must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." <u>United States v. Rojas</u>, 554 F.2d 938, 943 (9th Cir. 1977) (internal quotation marks omitted); <u>United States v. Naghani</u>, 361 F.3d 1255, 1261 (9th Cir. 2004).

<b>IV.  DISCUSSION</b>

**A.      <u>Motion for Judgment of Acquittal</u>**

Defendant moves for a judgment of acquittal on the grounds that: (1) pre-indictment delay violated Defendant's Fifth Amendment rights; (2) Laundering of Monetary Instruments, 18 U.S.C. § 1956(a)(1)(B)(i) is unconstitutionally vague-as-applied; (3) the admission of police reports without requiring officers to testify violated Defendant's Sixth Amendment rights; and (4) the government obtained the Indictment based on perjured testimony in violation of Defendant's Fifth Amendment rights.  (Motion at 3-37.)  The government responds that a judgment for acquittal is improper as: (1) Defendant fails to show actual prejudice from the pre-indictment delay; (2) Title 18 U.S.C. § 1956(a)(1)(B)(i) solely pertains to activity unrelated to the Sixth Amendment right to counsel; (3) police reports were admitted for a limited, non-hearsay purpose and officers were, in fact, subject to cross-examination; and (4) prosecutors are not required to disclose exculpatory evidence to the grand jury, as was held by the Court's pretrial Order,[2] and the guilty verdict substantiates a finding of probable cause.  (Opp'n at 7-20.)  The Court addresses each ground in turn.

**1.      Pre-Indictment Delay**

Defendant moves the Court to reconsider its denial of Defendant's pretrial Motion to Dismiss Indictment for pre-indictment delay and for a judgment of acquittal on the grounds that the delay resulted in non-speculative prejudice to Defendant at trial, as numerous witnesses reported faded memories and documentary evidence was compromised.  (Motion at 3-12.)  The government

---

[2] (Order Denying Defendant Harmon's Various Motions, hereafter, "Pretrial Order," Docket Item No. 42.)

United States District Court
For the Northern District of California

1   responds that Defendant has failed to point to any evidence that any lapse in witness or document

2   loss caused by the delay addressed any key element of her defense.  (Opp'n at 7-14.)

3          As a general rule, the statute of limitations is seen as the mechanism whereby a defendant is

4   protected from the effects of excessive delay.  See United States v. Huntley, 976 F.2d 1287, 1290

5   (9th Cir. 1992).  However, "in some circumstances the Due Process Clause requires dismissal of an

6   indictment brought within the limitations period."  Id. (citing United States v. Marion, 404 U.S. 307

7   (1971)).  The Ninth Circuit has held that, to establish that a pre-indictment delay has violated her

8   due process rights, a defendant must show: (1) "that [s]he suffered actual, non-speculative prejudice

9   from the delay"; and (2) "that the delay, when balanced against the government's reasons for it,

10  'offends those fundamental conceptions of justice which lie at the base of our civil and political

11  institutions.'"  United States v. DeGeorge, 380 F.3d 1203, 1210-11 (9th Cir. 2004) (quoting United

12  States v. Doe, 149 F.3d 945, 948 (9th Cir. 1998)).  The Ninth Circuit requires a defendant to show

13  actual prejudice before the second prong will be considered and has noted that "the burden of

14  showing actual prejudice is heavy and . . . is rarely met."  Doe, 149 F.3d at 948.  While the Ninth

15  Circuit has acknowledged that evidence of "dimmed" witness memories is a factor in considering

16  whether a pretrial delay prejudiced a defendant, a defendant must still make a showing that evidence

17  was lost and that she was adversely prejudiced by that loss.  See United States v. Mays, 549 F.2d

18  670, 677 (9th Cir. 1977).  Upon a showing of actual non-speculative prejudice caused by the

19  government's pre-indictment delay, "it then becomes incumbent upon the government to provide the

20  court with its reason for the delay."  Id. at 678.

21         Here, Defendant provides the following evidence to show actual prejudice caused by the

22  delay:

23         (1)     Government witness Steven Kendig, an officer of the Mountain View Police
                   Department, could not recall when and how an affidavit making reference to
24                 Pantages' previous criminal conduct was delivered to the court.[3]

25  _____

26         [3]  (Motion for Acquittal, Ex. A, Defendant's Trial Transcript Outline at Vol. 1, 194:24-
    195:14, 200:8-20, 207:18-208:8, 209:22-210:4, 210:20-25, 211:1-20, 212:9-14, 213:1-15, 213:25-
27  214:7, 216:1-3, 223:2-9, 223:20-24, 225:10-15, 229:16-22, hereafter, "Transcript.")

28
                                            4

United States District Court
For the Northern District of California

(2)    Government witness David MacPherson was unable to recall what actions he took in regards to two particular checks at issue.[4]

(3)    Government witness James Sibley, a Santa Clara County Deputy District Attorney, could not remember whether or when he provided Defendant with key documents placing Defendant on notice of potential criminal liability.[5]

(4)    Government witness Ingrid Cortopassi, Pantages' former wife, could not recall the precise details in regards to Defendant's representation of Pantages and her interactions with Defendant.[6]

(5)    Defense witness Pantages could not recall specific details regarding conversations with Defendant about his business, details surrounding his involvement with a parallel civil case and whether he disclosed the nature of his business to his attorney in the civil case.[7]

(6)    Defense witness Yan Ebyam could not recall the details of his plea agreement, the specifics of his testimony before the grand jury and particular events leading up to the filing of the parallel civil case.[8]

(7)    Defendant could not recall the timing and substance of particular conversations with Pantages, including statements made to her regarding Pantages' business and Yan Ebyam.[9]

---

[4] (Transcript at Vol. 1, 248:13-23; Vol. 2, 351:4-21, 352:16-354:12, 369:4-9.)

[5] (Transcript at Vol. 2, 585:14-19; Vol. 3, 610:17-22, 611:2-7, 623:15-24, 642:13-643:7, 653:6-654:3, 661:1-5, 676:2-9, 682:16-21.)

[6] (Transcript at Vol. 3, 676:2-9, 682:16-21, 709:10-19, 715:5-17, 718:4-10, 718:14-18, 718:19-24, 719:14-19, 720:5-13, 725:23-726:3, 728:13-21, 729:21-732:19, 738:13-18, 740:10-741:6, 742:13-745:14, 746:4-10, 746:13-747:4, 751:12-755:17, 759:8-16.)

[7] (Transcript at Vol. 3, 809:19-21; Vol. 4, 926:12-24, 929:16-25, 934:14-935:4, 945:15-21, 957:15-17, 1009:19-1010:1, 1031:19-1032:13, 1043:14-21, 1049:13-23, 1071:11-18, 1073:3-6, 1075:20-25, 1076:14-19, 1077:4-10, 1081:23-1082:2, 1084:14-16, 1098:8-12, 1099:15-17, 1104:23-1105:3, 1106:23-1107:4, 112:7-1113:12, 1117:6-14, 1120:1-9, 1122:7-12, 1131:25-1132:5.)

[8] (Transcript at Vol. 5, 1265:1-16, 1265:19-23, 1266:10-13, 1280:23-1281:1, 1281:2-5, 1282:25-1283:3, 1285:1-2, 1286:5-12, 1288:18-21, 1295:7-9, 1295:14-19, 1295:20-22, 1299:17-21, 1299:22-25, 1303:17-20, 1305:12-17, 1305:22-25, 1306:1-4, 1306:5-9, 1320:20-22.)

[9] (Transcript at Vol. 5, 1346:7-12, 1347:6-13, 1349:12-17, 1350:11-19, 1360:2-4, 1365:10-13, 1372:3-8, 1409:4-10, 1412:6-8, 1417:23-1418:13, 1427:23-1428:4, 1428:5-7, 1428:16-20, 1429:3-9, 1429:19-20, 1435:1-7, 1439:19-20, 1442:3-24, 1442:25-1443:4, 1457:25-1458:2, 1464:9-11, 1464:15-21, 1466:4-8, 1472:16-21, 1472:22-1473:2, 1481:2-3, 1481:23-1482:3, 1482:8-11, 1484:8-12, 1488:5-1489:5, 1489:7-16, 1495:4-18, 1499:3-13, 1512:8-18, 1513:21-25; Vol. 6, 1582:16-19, 1583:7-9, 1587:8-17, 1588:9-14, 1590:21-1591:1, 1610:5-13, 1611:6-7, 1617:25-1618:6, 1634:22-24, 1648:18-20, 1673:22-24, 1675:3-7, 1676:12-15, 1676:24-1677:2, 1677:3-6, 1687:2-5, 1687:10-12.)

(8)     District Attorney documents were also compromised by the passage of time, including the state prosecutor's files.[10]

Although Defendant has made a showing of lapsed memories and incomplete files, the Court finds that Defendant has failed to meet the heavy burden of proving that the memory and document loss adversely affected her defense.  For example, Defendant presents evidence that multiple prosecutorial witnesses failed to recall the specific dates when Defendant received information that would have put her on notice that the funds at issue were from an unlawful source.  However, Defendant was charged with conspiracy and money laundering, crimes for which the government must prove beyond a reasonable doubt that Defendant knew the proceeds sprung from unlawful activity.  Contrary to Defendant's contention of prejudice, the inability of a prosecutorial witness to specify the date on which Defendant was put on notice that the funds may have been unlawful would actually prejudice the government's ability to prove the requisite scienter for these charges.  Further, Defendant presents evidence that multiple witnesses failed to recall the details of specific conversations, without any supporting evidence that the forgotten details would have benefitted Defendant at trial.  In particular, Defendant presents evidence of possible prejudice, based on Pantages' inability to recall the actual sequence of events at issue, in order to contradict the government's contention that Pantages gave Defendant the checks on the shared knowledge that Pantages' account was frozen.  However, Defendant fails to proffer nonspeculative evidence that the details Pantages failed to remember due to his intermittent memory lapses would have been exculpatory.  It does not necessarily follow that a witness with a pitch-perfect memory would testify in Defendant's favor or align their testimony with all dates documented in circumstantial evidence.

Defendant relies on United States v. Sherlock for the contention that she needs to show only a sliver of actual prejudice in order to shift the burden to the government to provide a reason for the delay.  962 F.2d 1349, 1354 (1989).  However, Defendant's reliance on Sherlock is misplaced.  In Sherlock, the Ninth Circuit did inquire into the second DeGeorge prong despite finding "the

---

[10]  (Transcript at Vol. 3, 628:12-630:8, 661:6-24, 663:21-668:3, 677:10-678:18; Vol. 6, 1589:5-1608:11.)

United States District Court

For the Northern District of California

1    showing of prejudice to be slim." <u>Id.</u>  However, in <u>Sherlock</u> the defendants, who were on trial for

2    the alleged sexual assault of two girls, presented evidence that the pre-trial delay resulted in lapsed

3    memories on the part of the victims as to alcohol consumption at the time the crime occurred, as

4    well resulting in the loss of a rape kit.  <u>Id.</u>  Yet the Ninth Circuit still found the defendants' showing

5    to be "slim."  In this case, Defendant's evidence, unlike that in <u>Sherlock</u>, consists solely of lapsed

6    memory.  However, Defendant fails to demonstrate that the evidence would be relevant to the crimes

7    for which Defendant was convicted.  Thus, the Court finds that Defendant does not meet her "heavy

8    burden" to show that the pre-trial delay resulted in prejudice.

9        Accordingly, the Court DENIES Defendant's Motion for a Judgment of Acquittal based on

10   pre-trial delay.

11        **2.        Constitutionality of 18 U.S.C. § 1956(a)(1)(B)(i) as Applied**

12        Defendant moves for a judgment of acquittal on the grounds that Laundering of Monetary

13   Instruments, 18 U.S.C. § 1956(a)(1)(B)(i) is unconstitutionally vague-as-applied to attorneys, like

14   her, who are mandated by California law to perform the conduct criminalized by the statute, thereby

15   burdening the Sixth Amendment right to criminal defense counsel.  (Motion at 12-20.)  The

16   government responds that the statute's application merely implicates Defendant's disbursement of

17   the funds and does not implicate any payment of attorney fees.  (Opp'n at 14-16.)

18        The Ninth Circuit has held that "[t]o pass the vagueness test, statutes and regulations 'must

19   be sufficiently clear so that ordinary people can understand what conduct is being prohibited,' and

20   written in a manner that 'does not encourage arbitrary and discriminatory enforcement.'"  <u>United

21   States v. Ninety-Five Firearms</u>, 28 F.3d 940, 941-42 (9th Cir. 1994) (quoting <u>Chalmers v. City of

22   Los Angeles</u>, 762 F.2d 753, 757 (9th Cir. 1985)).  "[I]f [a defendant's] actions clearly come within

23   the statute, [s]he cannot make a void for vagueness challenge."  <u>United States v. Jae Gab Kim</u>, 449

24   F.3d 933, 942 (9th Cir. 2006) (citing <u>United States v. Ocegueda</u>, 564 F.2d 1363, 1365 (9th Cir.

25   1977)).

26

27

28

**United States District Court**
For the Northern District of California

1    The challenged statute, 18 U.S.C. § 1956(a), provides in pertinent part:

2    Whoever, knowing that the property involved in a financial transaction represents the
     proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial
3    transaction which in fact involves the proceeds of specified unlawful activity knowing that
     the transaction is designed in whole or in part to conceal or disguise the nature, the location,
4    the source, the ownership, or the control of the proceeds of [the] specified unlawful activity.

5    Here, a jury convicted Defendant of five counts of violation of Section 1956(a)(1)(B)(i) for

6    depositing her client's unlawful funds into her client-attorney trust account and dispersing the funds

7    to her client and her client's wife in a series of transactions of various amounts.  The California

8    Rules of Professional Conduct Rule 4-100(B)(4) requires an attorney to "[p]romptly pay or deliver,

9    as requested by the client, any funds, securities, or other properties in the possession of the member

10   which the client is entitled to receive."  Clearly, the Rule would have obligated Defendant to return

11   her client's money upon request, in partial satisfaction of the elements required to prove a violation

12   of Section 1956(a)(1)(B)(i).  If it were the case that the government, to sustain a conviction under

13   Section 1956(a)(1)(B)(i), need only prove that an attorney knowingly participated in a transaction

14   using allegedly unlawful funds, then the statute might be so vague as to run afoul of the Sixth

15   Amendment right to counsel.  However, in order to sustain a conviction, the government must

16   additionally prove beyond a reasonable doubt that an attorney undertook the transaction knowing

17   that it was "designed in whole or in part to conceal or disguise the nature, the location, the source,

18   the ownership, or the control of the proceeds of [the] specified unlawful activity."  18 U.S.C. §

19   1956(a)(1)(B)(i).  Undertaking a transaction that an attorney knows to be designed to conceal the

20   source of allegedly unlawful funds is not clearly mandated by Rule 4-100(B)(4).  In fact, the

21   California Rules of Professional Conduct require an attorney to thoroughly document all

22   transactions conducted with client money and comply with audits.  Cal. R. of Prof. Conduct Rule 4-

23   100(B)(3).

24   Further, unlike 18 U.S.C. § 1957, which criminalizes any interstate transaction knowingly

25   involving unlawful funds and, thus, requires an exception for attorney fee payments to preserve its

26   constitutionality, Section 1956(A)(i)(b)(i) requires the additional scienter element that a defendant

27   know that the transaction was designed to conceal the unlawful source of the funds.  The Sixth

28
                                                          8

United States District Court

For the Northern District of California

1   Amendment right to counsel does protect against the chilling effect that would inevitably occur from

2   blanket criminalization of any transaction involving allegedly unlawful funds, including attorney fee

3   transactions.  However, the addition of a second *mens rea* requirement addressing concealment

4   limits the likelihood that a criminal defense attorney will be prosecuted for constitutionally protected

5   assistance of counsel.  This finding is consistent with the long-standing principle that "a scienter

6   requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the

7   complainant that his conduct is proscribed."[11]  Although some penal statutes may require an

8   exemption for transactions involving criminal defense attorney retainers make the statute comport

9   with the criminal defendant's Sixth Amendment right to counsel, the Court finds that Section

10   1956(a)(1)(B)(i) does not so require.  Thus, the Court finds Defendant's as-applied challenge to the

11   statute for vagueness unavailing.[12]

12       Accordingly, the Court DENIES Defendant's Motion for Judgment of Acquittal for

13   unconstitutional statutory vagueness as applied to Defendant.

14       **3.**       **Admission of Police Reports**

15       Defendant moves for a judgment of acquittal on the ground that the admission of police

16   reports at trial, without requiring the reporting officers to subject themselves to cross examination,

17   violated Defendant's Sixth Amendment Confrontation Clause rights under <u>Crawford</u>.[13]  (Motion at

18   20-23.)  The government responds that the police reports were admitted for limited non-hearsay

---

[11]  <u>United States v. Jae Gab Kim</u>, 449 F.3d at 943 (quoting <u>Village of Hoffman Estates v. Flipside</u>, 455 U.S. 489, 499 (1982)).

[12]  The Court recognizes the dilemma confronted by defense attorneys in that they may freely accept proceeds suspected to be derived from unlawful activity from defendants accused of a crime in order to pay fees, but may thereby face the possibility of criminal charges as a consequence of pursuing their livelihood.  Further, while the statute contains a second *mens rea* requirement that the government must show that a defendant knew that the transaction she was taking part in was designed to conceal the source, location or control of the proceeds, this *mens rea* component merely requires knowledge of the transaction's design and not intent to design the transaction to conceal.  Thus, the statute could criminalize conduct where a defendant merely knew of another's intent to conceal the source of the proceeds, perhaps even for non-criminal purposes, and took part in the transaction regardless.  This is particularly troubling in the context of defense attorneys, as they are obligated under Rule 4-100(B)(4) to return a client's funds promptly from their trust account.

[13]  <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).

1  purposes and were coupled with a limiting instruction in accord with <u>Crawford</u>, and that officers

2  were subjected to cross-examination at trial.  (Opp'n at 16-18.)

3          In <u>Crawford v. Washington</u>, the Supreme Court held that the admission of testimonial

4  hearsay evidence without subjecting the testifying witness to cross-examination violated the

5  Confrontation Clause, overruling the prior <u>Roberts</u> standard which admitted testimonial hearsay if

6  the evidence bore "adequate indicia of reliability."[14]  541 U.S. at 61.  However, <u>Crawford</u> did not

7  disturb the longstanding principle that the Confrontation Clause "does not bar the use of testimonial

8  statements for purposes other than establishing the truth of the matter asserted."  <u>Id.</u> at 59 n.9 (citing

9  <u>Tennessee v. Street</u>, 471 U.S. 409 (1985) (holding that admission of an accomplice's confession for

10  nonhearsay purposes did not raise Confrontation Clause concerns)).

11          Here, the Court finds that the government proffered the evidence at trial not to show the truth

12  of the matter asserted, but to prove that Defendant was on notice of her client's and his associate's

13  criminal conduct.  The Court provided a limiting instruction to this effect at trial.  Thus, the Court

14  finds that admission of the police reports did not violation the Confrontation Clause under <u>Crawford</u>.

15          Accordingly, the Court DENIES Defendant's Motion for Judgment of Acquittal for violation

16  of Defendant's Confrontation Clause rights.

17          **4.      Grand Jury Testimony**

18          Defendant moves for a judgment of acquittal on the grounds that the government failed to

19  disclose a key witness' plea bargain agreement and knowingly solicited perjured testimony from that

20  key witness to the grand jury, violating Defendant's due process rights.  (Motion at 23-36.)  The

21  government responds that the prosecutor was under no legal obligation to disclose exculpatory

22  evidence to the grand jury and that, as the witness merely testified to his subjective motivations

23  behind testifying, the witness' failure to testify as to his plea bargain agreement was not perjury.

24  (Opp'n at 18-20.)  Further, the government responds that any misconduct before a grand jury is

25  rendered harmless by the jury verdict.  (<u>Id.</u> at 20.)

26  _____

27          [14]  <u>Ohio v. Roberts</u>, 448 U.S. 56, 66 (1980).

28                                                          10

United States District Court

For the Northern District of California

It is a long-established principle that a conviction obtained by the government through the use of false evidence is violative of a defendant's due process rights. <u>Mooney v. Holohan</u>, 294 U.S. 103, 112 (1935). This principle is equally applicable to a conviction obtained by the government based on false testimony, even where the false testimony solely bears on the credibility of the testifying witness. <u>Napue v. People of the State of Ill.</u>, 360 U.S. 264, 269 (1959). The Ninth Circuit has held that a defendant, in order to sustain a claim based on <u>Napue</u>, must show that: (1) "the testimony (or evidence) was actually false"; (2) "the prosecution knew or should have known that the testimony was actually false"; and (3) "the false testimony was material." <u>Hayes v. Brown</u>, 399 F.3d 972, 984 (9th Cir. 2005) (citation omitted). "False evidence is material 'if there is any reasonable likelihood that the false [evidence] could have affected the judgment of the jury.'" <u>Hein v. Sullivan</u>, 601 F.3d 897, 908 (9th Cir. 2010).

Here, Defendant relies on <u>Napue</u> for the principle that "[a]n indictment based upon knowingly perjured testimony violates guarantees of due process" in applying the doctrine to perjured testimony before a grand jury. (Motion at 23.) The Court finds that Defendant unduly extends the <u>Napue</u> doctrine with this interpretation. In <u>Napue</u>, the Supreme Court held that "implicit in any concept of ordered liberty" is that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted *conviction*." <u>Napue</u>, 360 U.S. at 268 (emphasis added). Given the lowered evidentiary standards for grand jury proceedings and that prosecutors are under no similar duty to disclose exculpatory evidence as they are at trial,[15] the Court declines to extend <u>Napue</u> to apply to allegedly perjured testimony before a grand jury.

To the extent that Defendant contends that <u>Napue</u> applies to the effect of the allegedly perjured testimony at Defendant's trial, Defendant was able to call the witness to the stand at trial and cross examine him regarding his grand jury testimony, allowing the jury to consider this factor

---

[15] It is well established that prosecutors "simply have no duty to present exculpatory evidence to grand juries." <u>United States v. Isgro</u>, 974 F.2d 1091, 1096 (9th Cir. 1992) (applying <u>United States v. Williams</u>, 504 U.S. 36, 53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it.")).

1  in returning its verdict.  Thus, the Court finds that any allegedly perjured testimony before the grand

2  jury did not violate Defendant's due process rights under <u>Napue</u>.

3      Accordingly, the Court DENIES Defendant's Motion for a Judgment of Acquittal based on

4  prosecutorial misconduct.

5  **B.     <u>Motion for a New Trial</u>**

6      In the alternative, Defendant moves for a new trial on the same grounds as she moved for

7  acquittal.  (Motion at 3-37.)

8      Federal Rule of Criminal Procedure 33(a) provides, in pertinent part, that "[u]pon the

9  defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice

10 so requires."  A district judge may exercise his discretion to grant a new trial if an erroneous jury

11 instruction is given.  <u>See</u> <u>United States v. Recio</u>, 371 F.3d 1093, 1099-1103 (9th Cir. 2004).  Error

12 by the court in its jury instructions as to an essential element of the crime charged is ground for

13 granting a new trial should the deficient instruction prejudice the defendant's right to a fair trial.

14 <u>United States v. Perez</u>, 116 F.3d 840, 847 (9th Cir. 1997) (citing <u>Carella v. California</u>, 491 U.S. 263,

15 265 (1989)).

16     Here, upon consideration of its jury instructions, the Court concludes that it erroneously

17 failed to instruct the jury on an essential element of the charge involved in this case, such that the

18 jury was deprived of its duty to find every fact necessary to establish every element of the charged

19 offense beyond a reasonable doubt.

20     Title 18 U.S.C. § 1956(a)(1)(B)(i), provides in pertinent part:

21     Whoever, knowing that the property involved in a financial transaction represents the
       proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial
22     transaction which in fact involves the proceeds of specified unlawful activity knowing that
       the transaction is designed in whole or in part to conceal or disguise the nature, the location,
23     the source, the ownership, or the control of the proceeds of [the] specified unlawful activity.

24     Section 1956 requires that the government prove multiple acts, some by the defendant, some

25 by others, and that the government prove that the defendant acted with multiple mental states.  First,

26 as a prerequisite for liability under Section 1956, the government must prove that someone

27 committed a statutorily specified unlawful activity.  The phrase "specified unlawful activity" is

28

United States District Court

For the Northern District of California

1   defined in Section 1956(c)(7).[16]  Section 1956 does not require that the government prove that the

2   defendant committed one of the statutorily specified unlawful acts nor that the defendant knew that a

3   statutorily specified unlawful act was committed by someone.  The government is only required to

4   prove that the defendant knew at the time of the transaction that the transaction involved proceeds of

5   some kind of felony.  However, it is incumbent on the government to prove that an underlying

6   unlawful act was committed by someone that resulted in the proceeds used in the later transaction in

7   order to satisfy the statutory requirement that the financial transaction, in fact, involved those

8   proceeds.

9       In addition, Section 1956 requires that the government prove that the defendant conducted

10  the transaction "knowing" that someone had designed the transaction, in whole or in part to conceal

11  or disguise the previously proved unlawful activity.  Section 1956 is ambiguous as to whether the

12  "knowledge of design" the government must prove is either that the defendant's "knowledge of

13  design" must be to conceal the proceeds of some undefined unlawful activity or that the defendant's

14  "knowledge of design" must be to conceal the proceeds of the previously proved specified unlawful

15  activity.  The Court finds that it would be inconsistent to require only proof of knowledge on the part

16  of Defendant that the proceeds resulted from "some form of criminal conduct" in the first clause of

17  the statute and yet require proof of knowledge on the part of Defendant of the precise specified

18  unlawful conduct[17] with respect to the design of the transaction.  Therefore, the Court interprets

19  Section 1956 as only requiring proof of a defendant's knowledge that the transaction was designed

20  by someone to conceal or disguise the proceeds of some general or undefined unlawful activity.

21

22

23      [16]  Section 1956(c)(7) provides in pertinent part: "the term 'specified unlawful activity'
        means--(A) any act or activity constituting an offense listed in section 1961(1) of this title except an
        act which is indictable under subchapter II of chapter 53 of title 31."

24          Section 1961(1) provides in pertinent part: "'[R]acketeering Activity' means . . . (B) any act
        which is indictable under any of the following provisions of title 18, United States Code: . . .

25      [S]ection 659 (relating to theft from interstate shipment) . . . ."

26      [17]  The Court interprets the statutory language to mean that the government must prove
        beyond a reasonable doubt that "in fact" someone engaged in activity that is listed in 1956(c)(7) and

27      that the funds that were used in the financial transaction were proceeds from that particular activity.

28                                              13

In light of the Court's interpretations, the Court returns to focus on the statutory language requiring the government to prove that the transaction was, "in fact," with proceeds of "specified unlawful activity." Although recently modified, the Ninth Circuit Model Jury Instruction 8.147 does not instruct the jury on this statutory element.[18] The Model Instruction presumes that the indictment

_____

[18] The Ninth Circuit Model Instruction with respect to Section 1956 is as follows:

### 8.147  LAUNDERING MONETARY INSTRUMENTS
### (18 U.S.C. § 1956(a)(1)(B))

The defendant is charged in [Count _____ of] the indictment with [laundering] [attempting to launder] money in violation of Section 1956(a)(1)(B) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant [conducted] [intended to conduct] a financial transaction involving property that represented the proceeds of [*specify prior, separate criminal activity*];

Second, the defendant knew that the property represented the proceeds of [*specify prior, separate criminal activity*]; [and]

Third, the defendant knew that the transaction was designed in whole or in part [to conceal or disguise the [nature] [location] [source] [ownership] [control] of the proceeds of [*specify criminal activity charged in the indictment*]] [to avoid a transaction reporting requirement under state or federal law][.] [; and]

[Fourth, the defendant did something that was a substantial step toward committing the crime.

Mere preparation is not a substantial step toward committing the crime. To constitute a substantial step, a defendant's act or actions must demonstrate that the crime will take place unless interrupted by independent circumstances.]

A financial transaction is a transaction involving [the movement of funds by wire or other means that] [one or more monetary instruments that] [the use of a financial institution that is engaged in, or the activities of which] affect[s] interstate or foreign commerce in any way.

The laws of the [United States] [State of _____] require the reporting of [*specify reporting requirement*].

### Comment

For cases involving conduct on or after May 20, 2009, "proceeds" means "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. §

14

1    identifies which of the enumerated prior separate unlawful acts are alleged in the particular case.

2    However, the Indictment in this case never expressly identifies which of the statutorily specified

3    activities the government alleged to be the source of the proceeds.  (Indictment at 1.)  Rather, the

4    Indictment merely repeats the statutory language:

---

7    1956(c)(9) (subsection (c)(9) was added by Pub. L. 111-21, 123 Stat. 1618).

8         For cases involving conduct prior to May 20, 2009, consider *United States v. Santos*, 553 U.S. 507, 128 S. Ct. 2020, 2025 (2008) (plurality opinion) (Where the prior, separate criminal activity is gambling, the term "proceeds" must be defined as "profits."), and *United States v. Van Alstyne*, 584 F.3d 803, 814 (9th Cir.2009) ("We therefore view the holding that commanded five votes in *Santos* as being that 'proceeds' means 'profits' where viewing 'proceeds' as 'receipts' would present a 'merger' problem of the kind that troubled the plurality and concurrence in *Santos*."). *See also United States v. Webster*, 623 F.3d 901, 906 (9th Cir.2010) (reading *Santos* as holding that where a money laundering count is based on transfers among co-conspirators of money from the sale of drugs, "proceeds" includes all "receipts" from such sales).

14        If the defendant is charged with laundering a monetary instrument other than cash, *see* 18 U.S.C. § 1956(c)(5), the instruction should be modified accordingly.

16        Because it is a specific intent crime, it is reversible error to give Instruction 5.6 (Knowingly–Defined) in a money laundering case. *United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir.1994).  *See also United States v. Turman*, 122 F.3d 1167, 1169 (9th Cir.1997) (applying *Stein* retroactively).

18        The elements of this instruction follow the language of the statute, although in most cases the crime described in each element would be the same.  *See United States v. Jenkins*, 633 F.3d 788, 806-07 (9th Cir.2011).

20        With respect to the second element of the instruction, the government must prove that the defendant knew that the property represented the proceeds of the specific prior, separate criminal activity but need not prove that the defendant knew that the act of laundering the proceeds was unlawful.  *See United States v. Deeb*, 175 F.3d 1163, 1167 (9th Cir.1999).

23        With respect to the third element of the instruction, *see Cuellar v. United States*, 553 U.S. 550, 128 S. Ct. 1994, 2002-06 (2008) (evidence of how money was moved insufficient to prove knowledge).

25        The bracketed language stating a fourth element applies to attempt to launder monetary investments.  Jurors do not need to agree unanimously as to which particular act or actions constituted a substantial step toward the commission of a crime.  *United States v. Hofus*, 598 F.3d 1171, 1176 (9th Cir.2010).

28

15

United States District Court

For the Northern District of California

1

2

> ". . . defendant JAMIE HARMON, did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate commerce as described below which involved the proceeds of *a specified unlawful activity*. . ."

3   (Indictment ¶ 13.)

4    Without identifying the "specified unlawful activity," it is impossible for a fact-finder to

5   determine if the government has met its burden to prove that one of the enumerated felonies actually

6   took place and that the defendant was conducting a financial transaction with proceeds of that

7   felony.  Counts Three through Seven incorporate by reference "the factual allegations" of

8   paragraphs 1 through 12.[19]  (Indictment at 6.)  The Court examined the incorporated paragraphs to

9   determine if they identified an activity that would come within the definition of "specified unlawful

10  activity."  The difficulty is that there are multiple crimes charged in the incorporated paragraphs.

11  (Id. ¶¶ 1-12.)  For example, Counts Three through Seven incorporate by reference Paragraph 11 that

12  alleges, *inter alia*, that Pantages and Harmon conspired to conduct financial transactions that

13  involved proceeds of theft from interstate shipments by a common carrier.  (Id. ¶ 11.)

14   In its instructions in this case, the Court failed to instruct the essential element that someone

15  engaged in specified unlawful activity resulting in proceeds that were used in the later transaction.

16  Rather, the Court instructed the jury as follows:

17              **COUNTS THREE, FOUR, FIVE, SIX AND SEVEN**

18          Defendant Harmon is charged in Counts Three, Four, Five, Six and Seven of
    the Indictment with laundering monetary instruments in violation of Title 18 of the
19  United States Code, Section 1956(A)(1)(b)(i).  As I have instructed, each Count
    charges a separate crime.  Therefore you must decide each count separately.
20
            In order for Defendant Harmon to be found guilty of Counts Three or Four or
21  Five or Six or Seven, you must find that the government has proved beyond a
    reasonable doubt:
22
              1.      That Defendant Harmon knowingly issued Check No. 1112 (Count
23                    Three), Check No. 1113 (Count Four), Check No. 1114 (Count Five),

24  ────────────────

25      [19]  Incorporation by reference is a common and often efficient pleading practice.  However,
    while useful in many contexts, it can introduce confusion in a criminal case.  In this case, for
26  example, the incorporation of paragraph 6, which alleges that Pantages conspired with others to buy
    stolen goods, makes it appear as if Defendant Harmon should be considered as one of the co-
    conspirators.  A similar confusion is introduced with respect to the incorporation of Count 2 into
27  Counts 3 through 7.

28                                          16

United States District Court

For the Northern District of California

1   each dated January 7, 2004; or Check No. 1115 (Count Six) dated
    January 28, 2004, payable to "Ingrid Harry;" or Check No. 1120
2   (Count Seven) dated February 4, 2004, payable to "Christian
    Pantages," from an "Attorney Client Trust Account" maintained by
3   Defendant Harmon at South Valley National Bank;

4       2.   That South Valley National Bank is a financial institution that is
             engaged in, or the activities of which affect, interstate commerce in
5            some way or degree;

6       3.   That when she issued each respective check, Defendant Harmon knew
             that the funds against which the check was drawn constituted the
7            proceeds from some form of activity that constituted a felony under
             State or federal law;
8
9       4.   That when she issued each respective check Defendant Harmon knew
             that the issuance of the check was designed in whole or in part to
             conceal or disguise the nature, location, source, ownership or control
10           of proceeds of a prior theft of property from an interstate shipment.

11      In a Section 1956 case, it is incumbent on the Court to instruct the jury that the government

12  has to prove that someone engaged in activity that is listed in Section 1956(c)(7) and that the money

13  that was the subject of the financial transaction was in fact the proceeds of a statutorily specified

14  activity.  Upon review of the record, the Court finds that it failed to give that instruction.  The Court

15  further finds that proof of an independent prior unlawful act that serves as the source of the proceeds

16  is an essential element and that the facts necessary to prove that essential element were not predicate

17  facts, which must be presumed to find all other elements beyond a reasonable doubt.  Thus, a lack of

18  a specific finding by the jury on that element deprived Defendant of a fair trial.

19      Accordingly, the Court GRANTS Defendant's Motion, in the Alternative, for a New Trial.[20]

20  Presumably, the new trial will also include Count Two for which the Court has previously declared a

21  mistrial.

22                              **V.  CONCLUSION**

23      The Court DENIES Defendant's Motion for Judgment of Acquittal.  The Court GRANTS

24  Defendant's Motion for a New Trial as to Counts Three through Seven.

25  _____

26      [20]  In this Motion, as a separate ground for a new trial, Defendant also claimed that there was
    juror misconduct.  (See Docket Item No. 172.)  Because the Court has granted a new trial, the Court
27  need not reach the juror misconduct issue.

28
                                    17

On **September 12, 2011 at 1:30 p.m.**, the parties shall appear for a Status Conference.  On or before **September 2, 2011**, the parties shall file a Joint Status Statement.  In the Statement, the parties shall state their position with respect to whether this case should be transferred back to San Jose, as this is a San Jose venue case.  The parties may stipulate to have Judge Ware retain this case and preside over the new trial.  In addition, the government shall state its intention with respect to Count Two.

Dated:  August 18, 2011

JAMES WARE
United States District Chief Judge

**United States District Court**
For the Northern District of California

18

**United States District Court**
For the Northern District of California

1 | **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2 | Victor D. Vertner, vertner@pacbell.net
Richard C. Cheng, richard.cheng@usdoj.gov
3 | Grant P. Fondo, grant.fondo@usdoj.gov
J. Tony Serra, sbrown@pier5law.com
4 |

5 | **Dated:  August 18, 2011**                    **Richard W. Wieking, Clerk**

6 |

7 |                    **By:_____/s/ JW Chambers_____**
                    **Susan Imbriani**
8 |                    **Courtroom Deputy**

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |